UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW S. MULVIHILL,
                      Plaintiff,

**DECISION AND ORDER**

v.                                                                 17-CV-00209[1]

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,
                      Defendant.
_____

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before me are the parties' cross-motions for judgment on the pleadings [17, 21].[2] Having reviewed the parties' submissions [17, 21, 22], I order that this case be remanded to the Acting Commissioner for further proceedings.

## BACKGROUND

On February 6, 2013, plaintiff filed an application for DIB, alleging a disability onset date of March 15, 1999 due to central auditory processing delay ("CAPD") and attention-deficit hyperactivity disorder (ADHD) (R. 11-15).[3] After plaintiff's claim for DIB was initially

---

[1]       The parties have consented to the jurisdiction of a Magistrate Judge [23].

[2]       Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

[3]       References denoted as "R." are to the administrative record [8].

denied (R. 82-86), an administrative hearing was held on December 18, 2014 before Administrative Law Judge ("ALJ") Sharon Seeley (R. 26-69). The ALJ issued a decision denying benefits on August 24, 2015 (R. 10-21). The Appeals Council denied plaintiff's request for review on January 9, 2017, making the ALJ's determination the final decision of the Acting Commissioner (R. 1-3). Plaintiff thereafter commenced this action.

Plaintiff was 18 years old when he filed for DIB, and 20 years old at the time of the administrative hearing (R. 189). The record reflects that he was diagnosed with CAPD and Attention Deficit Disorder ("ADD") as a child (R. 157-160). He graduated from high school, although he was in a special education program (R. 33-36, 45-46). He was classified as learning disabled (R. 344) and an individualized education program ("IEP") was developed for him (R. 159). According to his IEP, "[d]ue to Central Auditory Processing Disorder, [plaintiff] needs instruction that includes various modalities. Visual, tactile, and kinesthetic delivery of material is essential for [plaintiff's] academic success. Due to Attention Deficit Disorder, [plaintiff] needs a structured learning environment that includes small group instruction, is student-centered teacher-directed with minimal distractions and preferential seating to help him stay focused. Due to low endurance and loss of focus, [plaintiff] needs to take breaks when taking tests that last longer than one hour" (R. 160).

On February 7, 2012, testing reflected that plaintiff had a full-scale IQ of 74, a performance score of 72, and a verbal score of 80 (R. 341). In a consultative examination on June 13, 2013, testing reflected that plaintiff had a verbal comprehension IQ of 66 and a full-scale IQ of 67 (R. 356).

Plaintiff and his mother testified at the administrative hearing (R. 26). Plaintiff testified that he attempted to work in a factory, but could not work fast enough, and had other difficulties keeping employment (R. 37-38).

**DISCUSSION**

**A.     Standard of Review**

The Social Security Administration ("SSA") provides for the payment of disabled child's insurance benefits if the claimant is eighteen years old or older and has a disability that began before attaining age twenty-two. 20 C.F.R. § 404.350(a)(5). The analysis remains the same. Wilkins v. Commissioner of Social Security, 2017 WL 927621, *1 (E.D. Mich.), adopted 2017 WL 914230 (E.D. Mich. 2017).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. Here, plaintiff asserts that ALJ Glazer erred at stage three by failing to evaluate whether plaintiff met the Appendix 1 listings for an intellectual disability under 20 C.F.R., Part 404, Subpt. P, Appendix 1, §12.05(C) ("12.05(C)"). Plaintiff's Brief [17-1], p. 8. Plaintiff has the burden of proof with respect to this claim. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012). Plaintiff also argues

that ALJ Seeley failed to account for plaintiff's CAPD in assessing his residual functional capacity, and therefore, his determination at step five that plaintiff retains the ability to perform work is not supported by substantial evidence. Plaintiff's Brief [17-1], p. 13. The Acting Commissioner bears the burden of proof at step five. Id.

**B.     Did ALJ Seeley err by failing to evaluate whether plaintiff met the Appendix 1 listings for an intellectual disability?**

Plaintiff argues that ALJ Seeley erred by failing to evaluate whether he met the listings for an intellectual disability under §12.05(C) of the Appendix 1 listings.[4] Plaintiff's Brief [17-1], p. 8. Pursuant to §12.05, an "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22". Among other ways, §12.05 is satisfied by a "valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function". §12.05(C).

As noted above, plaintiff's most recent full-scale IQ was 66 (R. 356). Indeed, plaintiff's other scores which are slightly higher than 70, for example his 2012 full-scale score of 74 and performance score of 72, may also satisfy the §12.05(C) standard. *See* Black v. Berryhill, 2018 WL 4501063, *5 (W.D.N.Y. 2018) ("IQ scores between 71 and 75 can provide a basis for a determination of *equivalency* to Listing 12.05C."). In any event, "[i]t is well established that

---

[4]     It should be noted §12.05 was revised significantly effective January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). The revised §12.05 significantly alters the criteria for meeting the listing. Because the decision in the case was issued prior to the effective date of the revision, the rules in effect at the time the decision apply to the court's review. *See* id. at 66138 n.1; Mechling v. Berryhill, 2018 WL 3388460, *1 (W.D. Pa. 2018).

even among multiple, varying IQ scores, the lowest score is to be considered with regards to Listing 12.05". Simmons v. Colvin, 2016 WL 3866620, *4 (W.D.N.Y. 2016). *See also* 20. C.F.R. pt. 404, Subpt. P, App. 1, §12.00(D)(6)(c). Prior to attaining the age of 22, he was also diagnosed with other mental impairments including CAPD and ADHD which may present deficits in adaptive and work-related functioning (R. 157-160).

While ALJ Seeley evaluated whether plaintiff met the listings with respect to §12.02 (Organic Mental Disorders) and §12.06 (Anxiety Related Disorders), she did not evaluate whether plaintiff met the listings for an intellectual disability under §12.05(C) (R. 14). The Acting Commissioner does not dispute this failure, but asserts various *post hoc* arguments to suggest that the tests which reflect that plaintiff's IQ was under 70 were not "valid", and that even if plaintiff's IQ scores were valid, his ADHD and other impairments were not sufficient to meet the listings. Acting Commissioner's Brief [21-1], pp. 15-19).

I need not analyze the merit of the Acting Commissioner's *post hoc* arguments. It is well-settled that neither I, nor the Acting Commissioner, should engage in *post hoc* efforts to determine what the ALJ would have done had the ALJ considered the issue. *See* McKinstry v. Astrue, 2012 WL 619112, *4 (D. Vt. 2012) aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action"). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir.1983).

Since the record includes evidence that plaintiff's full-scale IQ was below 70, and that he has other impairments (i.e. CAPD, ADHD) which may present a deficit in adaptive

functioning, ALJ Seeley erred by not evaluating whether plaintiff meets the listings under §12.05(C). Plaintiff argues that in light of this error, his claim should be remanded solely for the calculation of benefits. Plaintiff's Brief [17-1], p.13. However, where (as here) the Acting Commissioner argues that there is reason to question the validity of the plaintiff's IQ scores and the parties dispute whether plaintiff has a deficit in adaptive functioning, those factual issues must be addressed by the ALJ in the first instance. Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations."). Therefore, I remand this matter to the Acting Commissioner for further administrative proceedings consistent with the above.

**C.  Did ALJ Seeley fail to account for plaintiff's CAPD in assessing his residual functional capacity?**

Plaintiff also argues that ALJ failed to properly account for the limitations resulting from his CAPD when assessing plaintiff's residual functional capacity. Plaintiff's Brief [17-1], p. 13. While ALJ Seeley's residual functional capacity assessment included non-exertional limitations, finding that plaintiff can "understand, remember, and carry out only simple tasks" "maintain attention and concentration" for a period of two hours, "perform work that does not require substantial reading, writing, or math tasks" (R. 15), she did not address plaintiff's limitations in communicating with other people and learning new tasks caused by his CAPD. Upon remand, if it is determined that plaintiff does not meet the §12.05(C) listing, plaintiff's residual functional capacity should be reassessed to take into consideration the full scope of his non-exertional limitations.

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [17] is granted to the extent that this case is remanded for further proceedings consistent with the discussion herein but otherwise denied, and the Acting Commissioner's motion for judgment on the pleadings [21] is denied.

Dated: November 15, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge